JUDGE PRYOR
delivered the opinion oe the court.
Charles Miles died many years since, leaving a last will and testament by which he devised nearly all of his estate to his only child, Mrs. Ann E. Young. John Lancaster, Rev. J. M. Lancaster, and the appellee, E. B. Smith, were made his executors, and also trustees to hold the property for the benefit of his daughter. Some years after the death of the devisor and the marriage of his daughter with Samuel B. Young a controversy originated with the present appellees (Young and wife) and John Lancaster, who alone qualified as executor, in regard to the interest of Young and wife in the income or profits of the trust-estate. This estate was devised to the sole and separate use of Mrs. Young, and this court, in the litigation between her and her trustee, adjudged that she was entitled to all the profits during the continuance of the estate devised to her.
John Lancaster, who first qualified and acted as trustee, died, and the Rev. J. M-. Lancaster then qualified and acted until his death. E. B. Smith then qualified, and he is now the executor of the will and the trustee of Mrs. Young. While *424 John Lancaster was acting as trustee he invested a part of this trust-fund in Marion County bonds, and after his death they •were sold by Rev. J. M. Lancaster, who was at the time the acting trustee, and a profit realized on the purchase and sale of the bonds amounting to near thirty-seven hundred dollars. The whole proceeds of the sale of the bonds amounted to thirty-two thousand three hundred and fifty-three dollars. The trustee, it seems, collected interest at the rate of eight per cent per annum on this last sum, the interest having been paid him semi-annually. In the settlement of the accounts of the Rev. J. M. Lancaster as trustee, in the county court, he or his personal representative only accounted for six per cent interest on the amount of the sale of the bonds, and this present suit, in equity was instituted against the personal representative of the trustee, Lancaster, and the acting trustee, E. B. Smith, to recover the additional two per cent interest, and also the profits realized on the Marion County bonds. While this suit was pending P. S. Barbour, upon his petition filed, was made a defendant to the action, and he asserted a claim against Young and wife, evidenced by writing, for the sum of nine hundred dollars, and asked that it be paid him out of the profits of the trust-estate. Upon the hearing of the cause it was adjudged that Young and wife were entitled to the profits on the Marion County bonds, and to the additional two per cent interest realized by the trustee Lancaster. From this part of the judgment the representatives of Lancaster and the trustee of Mrs. Young have appealed. It was further adjudged that the profits of the trust-fund were liable to the payment of the debt of Barbour, and from that judgment Young and wife have appealed.
The will of Charles Miles fixes the amount to which his executors, or such of them as qualify, shall be entitled as compensation for their services — viz., one thousand dollars. The first executor, it seems, retained this sum as his allowance, *425 and his successors are now claiming an additional allowance, which was denied them by the court below; and of this they also complain.
The construction given the will of Charles Miles by this court (see 10 B. Mon. 287) leaves no room to question the right of Mrs. Young to all the interest and profits accruing from the estate devised her by her father. As said in that case, his daughter, Mrs. Young, was the principal object of his bounty, and it was his intention and desire that she should enjoy all the beneficial interests or profits of this estate during her life. Her power to dispose of the estate itself is expressly prohibited by the will; but her right to the interest and profits accruing from it, to dispose of as she desired, is equally as clear and certain. If the trustees, as they seem to have done, managed the estate with ca.re and prudence, so as to realize a handsome income, it is Mrs. Young’s gain; if they should be unfortunate, and without neglect on their part should lose' the estate, or it is diminished in value, the loss is hers, so far as it affects the annual profits. The argument relied on by the trustee, that the value of the estate is subject to change every year, and because it might possibly diminish in value, that therefore Mrs. Young is not entitled to the profits realized upon the investments made, can not be seriously considered. In the case of Montjoy, &c. v. Lashbrook, &c. (2 B. Mon. 261), it is said that what is made by the trustees out of the trust-fund the beneficiary is entitled to. If the interest collected by the trustee is the product of the trust-fund, there is no rule of equity that would give it to the trustee; but, like any other estate, the proceeds, unless otherwise disposed of, belong to the beneficiary of the trust. The court very properly adjudged the appellees, Young and wife, entitled to the profits on the trust-fund, including all the interest realized from it.
The only question of difficulty presented by the record results from the rendition of the judgment in favor of Barbour. *426 The estate devised to Mrs. Young is to her sole and separate use; and this constituting a separate estate in the wife, the interest and profits upon the estate must be of the same nature. There is a manifest difference, however, in the right or power of the beneficiary or cestui que trust over the estate itself and the income or profits derived from such an estate.
Mrs. Young has no right to alienate, encumber, or dispose of in any way the estate in the hands of the trustee from which the income for the maintenance of herself and children is derived; but the issues and profits of the estate the trustees are compelled to account for and pay to Mrs. Young without the order or sanction of a court of equity. When this income is received by the wife she may use it by investing it in other property, or in providing herself and family with the comforts of life. This income of the wife, and the property acquired by an investment of it, retains its character as separate estate so long as the wife owns or holds it, and the chancellor will see that she is protected in the free use and enjoyment of it as against the creditors of the husband or her own improvident acts; but to say that where she anticipates a portion of this income íd what was proper and necessary for her own maintenance and that of her family that neither the wife, trustee, nor chancellor can sanction it, would be such a restriction of its enjoyment as might deprive the wife of what was absolutely requisite for her subsistence. Suppose the trustee who has the control of this valuable trust-fund should refuse to pay over the annual income to Mrs. Young, could not the chancellor authorize such an expenditure of the means to which she was or might be entitled as would provide for the wants of herself and children, not upon the idea that the wife by contract can create a charge upon the income of her separate estate, but for the reason that the chancellor, standing in loco parentis and exercising a power peculiar to the jurisdiction of a court of equity, is authorized to say what is the legitimate and proper *427 use of the income of such an estate when not forbidden by the writing creating the trust, or any statute depriving that court of such jurisdiction?
The chancellor’s power over the estate itself is restricted by statute to a sale for purposes of re-investment, but not so over the income of the estate when applied to the uses and purposes for which the separate estate was created. This view of the law is in perfect harmony with all the adjudications of this court upon the subject.
In the case of Williamson v. Williamson (18 B. Mon.) it is said “that the appropriation of the issues and profits is, in substance and effect, an appropriation of the land itself.” In Shackleford v. Collier (6 Bush) it is said “that the savings of a feme covert out of her separate estate are hers.” In all these cases, as well as the cases referred to by counsel for Mrs. Young, the language used was with reference to the claims of the creditors of the husband as against the wife’s separate estate, and where the chancellor was asked to take charge of the estate, and apply the rents and profits as they accumulated to the payment of the debt; but it is nowhere held that the chancellor would refuse, where the wife has ample means for her support and the payment of her debts, to subject the income of her separate estate, to the use of which she would be entitled when it came to her hands without restriction, to the payment of a claim or liability created by her for such necessaries as contributed to the support of herself and children, and from which she has derived a full and beneficial consideration. It is true that neither the wife nor the husband can by reason of any contract create a lien on this separate estate, by anticipating the income in any way, so as to deprive herself and.family of its beneficial use, and a court of equity would not hesitate to cancel all such bargains and prevent such an appropriation of it as would defeat the object of the trust.
*428 The husband and wife in the present ease, at the time the stock was purchased, were living upon and cultivating a farm under and by the consent of the trustees. The husband was insolvent, and the stock, consisting of sheep and cattle, was delivered to the parties and placed upon this farm. The credit was given to the wife upon the faith of the income from her separate estate, as the writing evidencing the purchase shows, viz.:
“Dr. John Lancaster, trustee for A. E. Young, will pay to the order of P. S. Barbour the sum of nine hundred dollars, with interest from date, out of the first money of ours that may accrue in your hands after the 1st of January, 1868.
(Signed)
Sam’l B. Young,
“Feb’y 2, 1867. A. E. Young.”
The trustee accepted the order as follows, viz.:
“Accepted, to be paid out of the income of 1868 not otherwise appropriated. Witness my hand this 8th February, 1867.
John Lancaster.”
The will of Charles Miles directs his executors to permit his daughter and her husband “ to have the use of the property devised, but subject to the entire control of my said executors and trustees for the benefit of my said daughter and any children she may have.” It was made the duty of the trustee by this provision of the will to see that the profits of the trust-fund were applied to the benefit of Mrs. Young and her children. The right to the- use of this income by the wife was given subject to the supervision and control of the trustee. He had the power to appropriate any part of it, by the consent of Mrs. Young, for her support and maintenance and that of her children. His acceptance of the order evidences his consent, as well as the necessity for the purchase of the stock for the use of the family upon the farm, and in the absence *429 of any proof showing that it was sold for more than its value this court will sanction the purchase made by the husband and wife and ratified by the trustee. The trust-estate is valuable, and the income therefrom three or four thousand dollars annually. It would be inequitable to withhold the money from Barbour and permit the beneficiaries of the trust to retain this property. The judgment in favor of Barbour is therefore affirmed.
The court erred in refusing to make to J. M. Lancaster, executor, an allowance for his services as such. It is true the will fixes the compensation of the executors and trustees at one thousand dollars; only one of them, however, qualified, and for the reason doubtless ■ that the compensation was insufficient. The trustees have managed the estate faithfully, and added greatly to its income. It is a large estate; and if either had refused to qualify after the death of the first trustee, a stranger appointed by the court would have been entitled to pay for his services. The representatives of Lancaster should have at least five per cent allowed them upon the profits realized from the sale of the Marion County bonds.
It does not appear that the trustee Smith has done any thing in his capacity as such for which he should be paid. The attorneys’ fees of Harlan and Newman should not be paid out of the trust-fund; they were representing Lancaster’s executors. The present trustee, Smith, was one of these executors, and the position of those parties was in direct antagonism to the rights and interest of Mrs. Young. Her right to the profits of this estate had once been litigated and settled in her favor; and as she was compelled to bring this suit to recover what the trustees or executors should have paid her without suit, the estate of Lancaster must pay the costs, and also the fees of the attorneys representing that interest. No interest, however, should have been charged the executors of Lancaster on the two per cent interest collected by him. It is proper *430 that the cost on the cross-pleading of Barbour should be paid out of the trust-fund. Lancaster’s estate must also pay the costs of this appeal, except the costs in the appeal of Barbour; for this the trust-fund is liable.
For the reasons herein stated the judgment on the original petition is reversed, with directions to modify the same as herein indicated, and for further proceedings consistent herewith.